**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 11:13 am, Mar 30, 2018

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 13 Case |
| ) | Number <u>16-11048</u> |
| CORNELIUS DOOLITTLE, ) | |
| ) | |
| Debtor ) | |
| _____) | |

## OPINION AND ORDER

Before the Court is a Motion for Turnover of Excess Funds filed by Cornelius Doolittle ("Debtor") requesting the Chapter 13 Trustee ("Trustee") turnover $3,139.41 mailed to the Trustee by Wells Fargo Home Mortgage ("Wells Fargo") as an "escrow overage." The Trustee objects to turning the money over to the Debtor arguing it is property of Debtor's bankruptcy estate which Debtor has not disclosed or exempted. This is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (E) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, Debtor's motion is denied as to the portion of the escrow overage related to the post-confirmation mortgage payments; and as to the portion of the escrow overage related to the pre-confirmation mortgage payments, Debtor shall have fourteen (14) days from entry of this order to file amended

AO 72A
(Rev. 8/82)

bankruptcy schedules disclosing the escrow overage. Thereafter, the Trustee shall promptly turnover to Debtor the excess escrow associated with the mortgage payments made by Debtor pre-confirmation.

## FINDINGS OF FACT

The Trustee and Debtor have stipulated to the following facts:

1. Debtor filed Bankruptcy on August 3, 2016.

2. A Trustee's Motion to Confirm Case as Amended was filed on September 20, 2016. (Docket #23). Said Motion showed that Debtor will pay a dividend of $35,020 or more to unsecured creditors.

3. The Order Granting Confirmation was filed on September 26, 2016. (Docket #26).

4. [Wells Fargo] was listed as a secured creditor in [Debtor's] bankruptcy and filed Proof of Claim No. 3 on September 7, 2016. Said claim was secured by as security deed on Debtor's residence.

5. The Debtor's confirmed plan provides that [Debtor] is paying Wells Fargo directly.

6. On April 21, 2017, [Wells Fargo] mailed a check to the Chapter 13 Trustee's office in the amount of $3,139.41. Said funds were described as "escrow overage" resulting from Wells Fargo's review of Debtor's mortgage account.

7. On April 21, 2017, Wells Fargo filed a Notice of Mortgage Payment Change calculating the escrow overage and changing Debtor's monthly payment from $1,054.94 to $915.97 starting June 1, 2017.

8. The Chapter 13 Trustee's Office received the escrow overage funds of $3,139.41 and posted them to Debtor's account on April 26, 2017. Trustee is still holding said funds.

AO 72A
(Rev. 8/82)

9. On May 2, 2017, the Chapter 13 Trustee's Office forwarded a copy of Wells Fargo's correspondence to Debtor's counsel notifying counsel of the Trustee's receipt of said funds.

10. Debtor's counsel filed a Motion to Turnover said funds on May 31, 2017. (Docket #34).

11. The Chapter 13 Trustee's Office objected to the Motion to Turnover on June 5, 2017, based upon the fact Debtor had not disclosed or exempted said funds. (Docket #37).

12. As of July 27, 2017, Debtor is current on payments to the Chapter 13 Trustee pursuant to his confirmed plan.

13. As of July 27, 2017, Debtor has not amended his schedules or exemptions.

14. Debtor has exhausted any exemptions available with respect to the escrow overage.

Dckt. No. 40, Debtor's Br.

The Trustee divides the overage into three distinct time frames: (i) three (3) mortgage payments made pre-petition, (totaling approximately $784.85); (ii) two (2) mortgage payments made post-petition, pre-confirmation (totaling approximately $523.24); and (iii) seven (7) mortgage payments made post-petition, post-confirmation (totaling approximately $1,831.32).[1]

---

[1] These are rough calculations, as the Trustee based the payment dates on Wells Fargo's annual review dates. Because Wells Fargo's review is annual and the overage check is dated April 14, 2017, the Trustee surmises the earliest time period it could cover is April 2016. With the petition filed August 2016 and the plan confirmed September 2016, the Trustee asserts the escrow overage covers five (5) pre-confirmation mortgage payments from April 2016 to September 2016 and seven (7) post-confirmation payments from October 2016 to April 2017. Dckt. No. 41, p. 11.

3

Dckt. No. 41, p. 11.

## CONCLUSIONS OF LAW

Debtor contends the escrow overage was created by Debtor's post-petition mortgage payments which were paid outside of the plan and are not property of his bankruptcy estate under 11 U.S.C. §1327(b) and <u>Telfair v. First Union Mortgage Corp. (In re Telfair)</u>, 216 F.3d 1333, 1340 (11th Cir. 2000) and therefore the escrow overage should be returned to Debtor. Conversely, the Trustee argues pursuant to 11 U.S.C. §1306 and <u>Waldron v. Brown (In re Waldron)</u>, 536 F.3d 1239, 1242-43 (11th Cir. 2008), the portion of the escrow overage relating to Debtor's post-confirmation wages and earnings are property of his bankruptcy estate and should be remitted to the Debtor's creditors. The Trustee concedes the escrow overage is not necessary for plan fulfillment as Debtor is current in his plan payments. The Trustee also concedes that the portion of the escrow overage related to pre-confirmation mortgage payments would normally revest in Debtor at confirmation; however, the Trustee argues Debtor's failure to amend his schedules to disclose the escrow overage has prevented this portion of the overage from revesting.

**Post-Confirmation Mortgage Payments**.

In order to determine if the post-confirmation escrow overage is property of the bankruptcy estate, the Court turns to

4

11 U.S.C. §1306 and §1327 which define property of the chapter 13 bankruptcy estate. Section 1306(a) defines property of the chapter 13 bankruptcy estate to include all property acquired by the debtor <u>after</u> a case commences stating:

> Property of the estate includes, in addition to the property specified in section 541 of this title-
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> >
> > (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. §1306(a). Section 1327(b) is more narrow and revests property of the bankruptcy estate into the debtor upon confirmation of the chapter 13 plan, providing: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. §1327(b).

The Eleventh Circuit in <u>Telfair</u>, addressed the purported tension between §1306(a)(2) and §1327(b): ". . . while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court,

5

the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." Telfair, 216 F.3d at 1340. In Telfair, the Eleventh Circuit concluded the debtor's post-confirmation mortgage payments were not property of the bankruptcy estate as they were paid outside the plan. Id. Thereafter, in Waldron the Eleventh Circuit explained its holding in Telfair:

> The debtor in Telfair sought to avoid liability for costs incurred in the collection of mortgage payments owed by the debtor outside his plan. The debtor argued that the mortgage payments were property of the estate protected by the automatic stay and could not be applied to pay the collection costs of the mortgagee, but the obligation to make those payments existed at confirmation and had been disclosed to the bankruptcy court, which allowed the payments to occur outside the debtor's plan. The debtor's assets used to make those mortgage payments were vested in the debtor at confirmation.
>
> We did not address in Telfair entirely new property interests acquired by the debtor after confirmation and unencumbered by any preexisting obligation. We instead stated that "confirmation returns so much of that property to the debtor[ ]," and "that property" referred to the property of the debtor placed in the control of the bankruptcy court when the debtor filed his petition. Id. New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to him then.

Waldron, 536 F.3d at 1242-43. (emphasis added).

Debtor contends this case is more like Telfair, in

6

that the obligation to make the mortgage payments and the assets needed to make those payments vested in Debtor at confirmation. Debtor argues this overage is from these assets that vested in Debtor at confirmation and therefore belong to Debtor. The mortgage payments, like those in Telfair, were paid outside the plan. Because of this payment arrangement, Debtor argues this is not an entirely "new asset," "new property interest" or "windfall" unencumbered by a preexisting obligation. Harris v. Viegelahn, 135 S.Ct. 1829, 1839 (2015)("[W]e do not regard as a 'windfall' a debtor's receipt of a fraction of the wages he earned" once the case is converted to a chapter 7 case.).

Conversely, the Trustee argues while the obligation to make mortgage payments existed at confirmation, the escrow overage is an entirely new unexpected property interest. See In re Waldron, 536 F.3d at 1243 ("New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to him then. . . . this avoids creating a distinction among types of post-confirmation estate property . . . ."). The Trustee states that unlike in Telfair, where the entire amount set aside for the mortgage payments was necessary, this case presents the situation where the entire amount was not necessary to make the mortgage payments and therefore does not belong to Wells Fargo. Furthermore, the Trustee argues this escrow overage is similar

7

to the post-confirmation tax refund case of U.S. v. Harchar, 371 B.R. 254, 268 (N.D. Ohio 2007) favorably cited by the Eleventh Circuit in Waldron where the court held such refunds are property of the chapter 13 bankruptcy estate.

After considering the matter, the Court finds these facts are analogous to Harchar and Barbosa v. Soloman, 235 F.3d 31, 36-37 (1st Cir. 2000), cited favorably by the Eleventh Circuit in Waldron. In Harchar, the court held that a tax refund received post-confirmation was property of the chapter 13 bankruptcy estate. A tax refund is similar to the escrow overage in that it is the portion of the tax payment that was not necessary to fulfill the debtor's tax obligation. U.S. v. Harchar, 371 B.R. at 268; see also In re LaPlana, 363 B.R. 259, 267 (Bankr. M.D. Fla. 2007)(when a court orders turnover of the tax refunds "a court is simply correcting a debtor's error of overestimating his or her tax liability made when completing the means test."); In re Carrasco, 395 B.R. 154, 156 (Bankr. M.D. Fla. 2008)(holding that future post-petition tax refunds are property of the estate and may be considered part of her projected disposable income). In Barbosa, the court held the proceeds from the post-confirmation sale of real property were property of the bankruptcy estate and granted the chapter 13 trustee's motion to modify the chapter 13 plan to include these proceeds in debtor's plan for distribution to the debtor's

creditors. Barbosa, 235 F.3d at 37-38 ("'receiving proceeds has also altered the debtors financial circumstances,' which brings into play §1329 of the Code").

Furthermore, the Trustee contends had the parties known the actual charges pre-confirmation, this excess amount would have been included in Debtor's disposable income as Debtor's post-petition wages which are property of the estate. See 11 U.S.C. §1306(a)(2)(property of the estate includes a debtor's "earnings from services performed by the debtor after the commencement of the case").

In this case, the receipt of the escrow overage was unexpected and is a new post-confirmation asset that did not vest in Debtor at confirmation. The overage represents money that does not belong to Wells Fargo as it was not necessary for the mortgage payments. The payments were made from Debtor's post-petition wages which are property of the chapter 13 bankruptcy estate pursuant to 11 U.S.C. §1306(a)(2). Allowing the Trustee to retain the escrow overage is simply correcting the error of overestimating the amount of the mortgage payment, similar to a tax refund. For these reasons, Debtor's motion for turnover is denied as to the portion of the escrow overage attributable to post-confirmation mortgage payments.

**Pre-confirmation Mortgage Payments**.

The Trustee estimates that approximately $784.85 of

9

the escrow overage relates to pre-petition mortgage payments and approximately $523.24 relate to post-petition, pre-confirmation mortgage payments. Dckt. No. 40, Ex. C; Dckt. No. 41, p. 11. The Trustee argues revesting of these funds into the Debtor is prevented because Debtor has not yet amended his schedules to disclose the escrow overage, citing Thompson v. Quarles, 392 B.R. 517, 523-24 (S.D. Ga. 2008). Under Telfair and Waldron, the Trustee concedes that but for Debtor's failure to disclose these sums, the overage associated thereto would have revested in Debtor upon confirmation of the plan, as these funds are not necessary for the fulfillment of the plan. In the post hearing briefs, Debtor states he can, and will, amend his bankruptcy schedules to disclose the escrow overage if the overage is found to be property of the estate.[2]

Given the concessions and stipulations of the parties and under the facts of this case, Debtor shall be given 14 days from entry of this order to amend his bankruptcy schedules to disclose receipt of the escrow overage. Upon filing of the amended schedules, the Trustee shall promptly return the pre-confirmation portion of the escrow overage to Debtor.

For the foregoing reasons, Debtor's motion for Turnover is ORDERED DENIED as to the portion of the escrow

---

[2] The parties agree there is no evidence of Debtor acting in bad faith or attempting to hide the receipt of these funds. Dckt. No. 41, p. 11, n.8.

AO 72A
(Rev. 8/82)

overage related to the post-confirmation mortgage payments; and as to the portion of the escrow overage related to the pre-confirmation mortgage payments, Debtor shall have fourteen (14) days from entry of this order to file amended bankruptcy schedules disclosing the escrow overage. The Clerk is directed to set a hearing on any remaining issues as to the exact amount of overage related to pre- and post-confirmation mortgage payments. Thereafter, the Trustee shall promptly turnover to Debtor the excess escrow overage associated with the mortgage payments made pre-confirmation.

*signature*

SUSAN D. BARRETT
UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
This 30th of March 2018.